IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOWARD SCOTT ALLISON, | : |
| Plaintiff | : |
| v. | : Case No. 3:24-cv-125-KAP |
| ABBIE TATE, WARDEN, BLAIR | : |
| COUNTY PRISON, *et al.*, | : |
| Defendants | : |

Memorandum Order

Screening the complaint in accordance with the Prison Litigation Reform Act, I dismiss it as to defendant Dunkle and grant leave to amend it as explained below.

Plaintiff Allison is an inmate in the custody of the Pennsylvania Department of Corrections after a 2008 conviction in the Blair County Court of Common Pleas for rape of a minor resulted in a sentence of 12½-25 years of imprisonment. *See* Allison v. Superintendent Waymart SCI, 703 Fed.Appx. 91 (3d Cir.2017)(habeas proceedings). Allison has continued to challenge his conviction and sentence and in October 2023 had a hearing in Blair County. Allison was transferred from his long-term place of custody at S.C.I. Waymart to S.C.I. Huntingdon (approximately an hour from the courthouse in Hollidaysburg), and then to the Blair County Prison (approximately one minute from the courthouse). Allison arrived at the Blair County Prison on October 18, 2023 for the hearing on October 19, 2023.

Allison alleges that he was confined in the Blair County Prison from October 18, 2023 to October 26, 2023, and subjected to unconstitutional conditions similar to the "shockingly unsanitary" ones alleged by the inmate plaintiff in Taylor v. Riojas, 592 U.S. 7 (2020)(*per curiam* reversal of grant of qualified immunity to defendants who allegedly caused inmate to be housed naked for six days in cells "teeming with human waste"). According to Allison, when at intake the medical staff learned that his conviction was a sex offense the atmosphere immediately became hostile, and he implies this caused some unnamed person's decision to house him in a cell with several inmates that "had some serious mental health issues." The next morning, corrections officers attempted to have Allison strip naked. When Allison asked why, an unnamed someone told him that the medical staff determined that he was at high risk for suicide. The attempt to have Allison strip was interrupted by his need to be in court, but after his return to the prison after two court appearances on October 19, 2023, Allison was stripped of his shoes and clothes and given only a blanket, then housed in a cell for the next several days with heroin addicts going through withdrawal and mentally ill inmates who had not been provided with their medications. The first night there were five men in a four-man cell, and thereafter either

1

four or three men in the cell, all of them similarly deprived of clothes and provided with blankets. Allison felt endangered by his cellmates (on October 20, 2023 two of them fought with each other and were removed, one permanently), the cell was never cleaned, the floor was contaminated with blood and vomit, and he was not permitted to shower. Allison alleges that he filed one grievance about his conditions of confinement. He alleges that the injury he suffered is "emotional trauma."

Allison alleges that the statement that the medical staff determined that he was a high risk for suicide is a sham contradicted by the fact that the cell he was placed in was not an observation cell. An unnamed corrections officer allegedly told Allison at one point "That's just what we do with sex offenders."

Allison names two defendants: Abbie Tate, the warden of the Blair County Prison, and Samuel Dunkle, the Court Administrator. Allison also describes as intended defendants "Unnamed Prison Staff" and "Unnamed Medical Staff." Tate is liable to him, according to Allison, because she "had an Official Duty to know what was going on in her prison, and knew or should have known how the prison treated sex offenders." Dunkle is liable "for arranging to have me placed in the Blair County Prison," according to Allison, because according to his understanding of state law he should have been housed at S.C.I. Huntingdon and should not have been in the Blair County Prison in the first place.

Because plaintiff is an inmate and the defendants are governmental entities or employees, the complaint is subject to screening in accordance with the Prison Litigation Reform Act as codified at 28 U.S.C.§ 1915A:

> (a) Screening.--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

This parallels the PLRA's requirements for litigants proceeding *in forma pauperis*, at 28 U.S.C.§ 1915(e)(2):

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that --
> (A) the allegation of poverty is untrue; or
> (B) the action or appeal --

  (i)  is frivolous or malicious;
  (ii)  fails to state a claim on which relief may be granted; or
  (iii)  seeks monetary relief against a defendant who is immune from such relief.

  Fed.R.Civ.P. 8 requires any complaint to be a short and plain statement containing sufficient factual matter that if accepted as true would state a legal claim that is plausible on its face. *See* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In the Supreme Court's words, plaintiff must allege enough facts in the complaint to "nudge" a claim "across the line from conceivable to plausible." *Id.*, 556 U.S. at 683, *quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plaintiff must in a nonconclusory way allege facts that permit the inference that each defendant he names caused the harm he alleges. *See* Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005); Chavarriaga v. New Jersey Department of Corrections, 806 F.3d 210, 222 (3d Cir. 2015).

  It is important to emphasize that the presumption for pleading purposes that the allegations of the complaint can be proved – that is, that the allegations are true - is limited to plausible allegations of fact. A plaintiff cannot allege a conclusion of law: whether alleged facts if proved would amount to a legal claim is a question of law for the Court. *See* Ashcroft v. Iqbal, 556 U.S. 662, 686 (2009), rejecting as conclusory plaintiff's allegation that government officials discriminated against him on account of his religion, race, or national origin for no legitimate penological interest with the comment:

  Were we required to accept this allegation as true, respondent's complaint would survive petitioners' motion to dismiss. But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.

  This immediately dooms Allison's claim against Dunkle. Except for transfers that in their nature impose an atypical and significant hardship such as to custody in a supermax prison, *see* Wilkinson v. Austin, 545 U.S. 209 (2005), an inmate has no federal procedural protections relating to transfers because he has no federal right to be housed in a particular prison. *See* Meachum v. Fano, 427 U.S. 215 (1976)(intra-state prison transfers); Olim v. Wakinekona, 461 U.S. 238 (1983)(inter-state prison transfers). Even if Dunkle ordered Allison's transport to the Blair County Prison in violation of state law, that would give Allison no federal claim against Dunkle. And Allison has no claim against Dunkle based on the conditions Allison faced in the Blair County Prison. A county court administrator does not operate a prison. For Dunkle to be liable to Allison, Dunkle would have to have been the substantial cause of a violation of Allison's rights, not just a link in the chain of events that resulted in Allison's presence in Blair County.

  Turning to Allison's claim against Tate, corrections personnel are liable for deprivations of basic human needs in prison if they are "deliberately indifferent" to those needs. That requires allegations that a defendant "knows of and disregards an excessive

risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Allison's claim against Tate is based in part on the assertion that Tate "knew how the prison treated sex offenders." Allison does not allege any facts indicating that Tate even knew Allison was in the prison, and Allison's assertion would not be inconsistent with Tate having been on vacation during Allison's stay there. As the Supreme Court held in Ashcroft v. Iqbal, 556 U.S. at 680, a conclusory allegation in the complaint that a defendant "knew" something is not an allegation of fact entitled to the assumption of truth. In Ashcroft v. Iqbal, the plaintiff pleaded that the defendant government officials "knew of, condoned, and willfully and maliciously agreed" to subject plaintiff to harsh conditions of confinement as a matter of policy. The problem, said the Court, is not that such an allegation is unreasonable or nonsensical, but that it is conclusory. 556 U.S. at 680. So it is with Allison's allegation that Tate "knew how the prison treated sex offenders."

Turning to Allison's claim based on the alternative assertion that Tate "should have known how the prison treated sex offenders," that is the incorrect assertion that the warden has *respondeat superior* liability for any civil rights violations by prison employees. There is no such vicarious liability in civil rights claims. Being legally responsible for overall operation of the prison is not personal participation in any subordinate's actions. *See* Monell v. New York City Dep't of Social Services, 436 U.S. 658, 690-91 (1978) (municipal employers are liable for deprivation of civil rights caused by their own illegal customs and policies but are not liable for their employees' actions). To state a claim against Tate for a civil rights violation by a subordinate Allison must allege facts allowing the inference that Tate caused the violation, that is, the alleged actions of the subordinate that violated Allison's rights were pursuant to a policy of Tate's. A "policy" is either an act by Tate herself or a practice throughout the prison "so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 60–61 (2011). Allison does not allege factually that he and Tate interacted at all, much less that Tate ordered his alleged treatment. Allison does not allege one other instance of maltreatment or any similar episode that would allow the inference that a custom of "how the prison treats sex offenders" even exists, much less allege facts that the nature of the charges against him caused his alleged treatment. What Allison describes is being consistent with a temporary transferee at a county prison for a hearing in court being celled in the RHU in administrative custody with what, from Allison's description of their health conditions, were probably pretrial detainees. Accepting for the moment Allison's worldview that it is all about him, the prison kept persons suffering from mental illness and heroin withdrawal on standby so that, once prison personnel discovered that Allison was convicted of a sex offense, they could be placed in a cell with Allison to torment Allison. That is implausible.

This is not to say that Allison could not make out a colorable claim against someone. Extreme cell conditions like those described in Taylor v. Riojas, *supra*, are actionable with or without the motive of hostility toward sex offenders that Allison alleges some unnamed person admitted to him. The use of a "John Doe" designation for an actual person whose identity is not known is permissible if reasonable discovery permits the defendant to be identified. Blakeslee v. Clinton County, 336 Fed.Appx. 248, 250 (3d Cir. 2009). But Allison cannot name "unnamed medical staff" and "unnamed prison staff" as defendants and expect the Court to figure out who or how many corrections officers to serve. The Court of Appeals directs that with two exceptions not relevant here "federal courts treat *pro se* litigants the same as any other litigant." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244 (3d Cir. 2013). Plaintiffs, counseled or *pro se*, have to describe individual defendants with enough particularity to satisfy Rule 8 even if they do not know their names, and similarly have to describe individual defendants with enough particularity (e.g. "the sergeant with the mustache who was working second shift in the RHU on October 22, 2023") for the Marshal to make service. Allison can name one John Doe defendant on the reasonable assumption that at least one person had to have ordered his cell assignment and forbade him from showering. If Allison wants more than one John Doe defendant, he has to allege facts making it plausible that more than one person is liable and describe each individual defendant with enough particularity that the Marshal can make service. The Court of Appeals, in Grayson v. Mayview State Hospital, 293 F.3d 103 (3d Cir.2002) and similar cases, directs district courts to allow plaintiffs in civil rights cases leave to amend unless that amendment is "futile" or "inequitable." Amendment of Allison's complaint is futile as to Dunkle. Allison may be able to plausibly allege facts that would state a claim against Tate or a John Doe employee at the prison.

The complaint is dismissed against Dunkle without leave to amend for failure to state a claim. Allison is given leave to file, on or before August 10, 2024, an amended complaint against Tate and one or more John Doe defendants. Failure to do so will result in the complaint as to those defendants being dismissed as well.

DATE: July 10, 2024

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel and by U.S. Mail to:

Howard Scott Allison HV-7470
S.C.I. Waymart
P.O. Box 256
Route 6
Waymart, PA 18472

5