IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOWARD SCOTT ALLISON, : | |
| Plaintiff : | |
| v. : | Case No. 3:24-cv-125-KAP |
| ABBIE TATE, WARDEN, BLAIR : | |
| COUNTY PRISON, *et al.*, : | |
| Defendants : | |

Memorandum Order

For the reasons explained below, the motions to dismiss at ECF no. 38 and ECF no. 45 are granted. The Court of Appeals, *see* Grayson v. Mayview State Hospital, 293 F.3d 103 (3d Cir.2002), directs district courts to allow plaintiffs in civil rights cases leave to amend unless that amendment is futile or inequitable. After fully briefed motions practice under Rule 12, allowing repeat amendment of inadequate claims would constitute an unauthorized amendment of Rule 12, and certainly is inequitable. The complaint as amended, ECF no. 35, is therefore dismissed with prejudice. The motion to dismiss at ECF no. 24 and the motion to strike at ECF no. 47 are denied as moot. The Clerk shall mark this matter closed. This is a final appealable order.

Plaintiff Allison filed a civil complaint in June 2024 that, because he is a prison inmate and his complaint names government employees or entities as defendants, is subject to the Prison Litigation Reform Act. The PLRA commands the dismissal of any complaint or portion thereof that is frivolous, *see* Neitzke v. Williams, 490 U.S. 319, 325 (1989)(defining frivolous as lacking an arguable basis in either law or fact), malicious, or fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C.§ 1915A. A complaint fails to state a claim under the PLRA using the same standard as does Fed.R.Civ.P. 12(b)(6). *See* Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). Therefore, under the PLRA, Fed.R.Civ.P. 8(a)(2), and Fed.R.Civ.P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

I screened Allison's original complaint under the PLRA, dismissed it as to defendant Dunkle, and granted leave to amend it as to other defendants. ECF no. 15. The amended complaint is at ECF no. 19. I ordered a second amendment to the complaint to adequately separate the allegations as to the defendants. ECF no. 34. The operative

1

second amended complaint is at ECF no. 35. (Because earlier versions are of no effect once a complaint is amended, the second amended complaint will usually be referred to as the complaint.) Once served, two sets of defendants filed motions to dismiss under Rule 12(b)(6): defendants Cruz and Helsel (sometimes referred to as the medical defendants) filed a motion to dismiss at ECF no. 45, brief at ECF no. 46, and defendants Tate and Sollenberger (sometimes referred to as the corrections defendants) filed a motion to dismiss at ECF no. 38, brief at ECF no. 39. The matter has been fully briefed, *see* plaintiff's filings at ECF no. 41, ECF no. 42, ECF no. 49, and ECF no. 50.

As Ashcroft v. Iqbal held, a plaintiff must allege enough facts in the complaint to "nudge" a claim "across the line from conceivable to plausible." 556 U.S. at 683, *quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. at 570. Plaintiff must in a nonconclusory way allege facts that permit the inference that each defendant he names was personally involved in causing harm to him. Chavarriaga v. New Jersey Department of Corrections, 806 F.3d 210, 222 (3d Cir. 2015).  Showing the possibility of misconduct is insufficient to show that the pleader is entitled to relief. Ashcroft v. Iqbal, *supra,* 556 U.S. at 679. Allegations do not have to be "unrealistic or nonsensical" to fail to state a claim (nonsensical allegations would be analyzed for frivolousness) because it is the conclusory nature of allegations, rather than their extravagantly fanciful nature, "that disentitles them to the presumption of truth." *Id.,* 556 U.S. at 681. The Supreme Court gave an example in Ashcroft v. Iqbal: allegations that the Attorney General was the "principal architect" of an unlawful scheme and the director of the FBI was "instrumental" in executing it were conclusions not facts and without more were not enough to state a claim. *Id.,* 556 U.S. at 680-81. In short, whether alleged facts amount to a legal claim sufficient to go forward to discovery is a question of law for the Court. *See id.* 556 U.S. at 686, rejecting as conclusory plaintiff's allegation that government officials discriminated against him on account of his religion, race, or national origin for no legitimate penological interest with the comment:

> Were we required to accept this allegation as true, respondent's complaint would survive petitioners' motion to dismiss. But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.

Inadequate allegations doom a complaint because, again *per* Ashcroft v. Iqbal, Rule 12 does not permit inadequate claims to continue on the theory that discovery might turn up some factual support for them: "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management" *Id.,* 556 U.S. at 685, and *id.,* 556 U.S. at 686: "Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."

Finally, a court's duty to construe *pro se* pleadings liberally and nontechnically is a command to overlook malapropisms and grammatical errors, but that has never permitted a court to construe conclusions as assertions of fact or "conjure up unpleaded facts to support ... conclusory suggestions." Hurney v. Carver, 602 F.2d 993, 995 (1st Cir.1979), quoting Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir.1977), *cert. denied*, 434 U.S. 1077 (1978), or "to construct full blown claims from sentence fragments," or "explore...all potential claims of a *pro se* plaintiff." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir.1985), *cert. denied*, 475 U.S. 1088 (1986). A lack of facts amounting to a colorable claim against a defendant makes a complaint an inadequate complaint, not a vague one that needs to be clarified. *See* Unger v. National Residents Matching Program, 928 F.2d 1392, 1401-02 (3d Cir.1991). As the First Circuit observed in O'Brien v. DiGrazia, 544 F.2d 543, 546 (1st Cir. 1976):

> A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

Or, as the Supreme Court more recently stated in Ashcroft v. Iqbal, supra, 556 U.S. at 687, "Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."

Plaintiff Allison is an inmate at S.C.I. Waymart serving a 2008 Blair County sentence of 12½-25 years for rape of a minor. *See* Allison v. Superintendent Waymart SCI, 703 Fed.Appx. 91 (3d Cir.2017)(habeas proceedings). In October 2023 Allison had a hearing in the Blair County Court of Common Pleas and was transferred from S.C.I. Waymart to S.C.I. Huntingdon and then to the Blair County Prison on October 18, 2023 for the hearing on October 19, 2023. Allison alleges that he was confined in the Blair County Prison from October 18, 2023, to October 26, 2023, and subjected to unconstitutional conditions because of the nature of his conviction. Complaint ¶¶ 8-9.

According to Allison, when he arrived at intake defendant Cruz, a nurse, asked him questions "from a standardized evaluation" about his health. This was unremarkable according to Allison. Complaint ¶ 9. Next, defendant Helsel, also a nurse, asked him questions relating to Allison's risk for suicide. In the course of "this extensive and exhaustive screening" Allison "was forced to disclose" that his conviction was for a sex offense, and the "overall attitude and prowess of the room" became hostile. Complaint ¶10. Allison next alleges - although he does not assert any further facts to support an inference that the decision was caused by his disclosure of the nature of his offense – that at Helsel's direction defendant Sollenberger, a corrections officer, housed Allison in a general population cell (J Block, Cell #9) with several inmates "with severe mental health issues." *Id.* The next morning, Sollenberger ordered Allison to strip naked and relinquish

all of his property, including his legal material and his eyeglasses. When Allison asked why, Sollenberger told him that "Ms. Helsel had stated that Mr. Allison was determined to be a 'high risk for suicide'." Complaint ¶ 11. The attempt to have Allison strip was interrupted by Allison's need to be in court. *Id.*

After Allison's return to the prison after his two court appearances on October 19, 2023, Sollenberger and unnamed J block officers ordered Allison to remove all his clothing. Allison was then housed in cell #8 with "a total of four, (4), nude inmates with deplorable conditions." Complaint ¶ 12.

In Complaint ¶¶ 13-14, titled Count I, Allison asserts a legal theory that Blair County's confinement of him in worse conditions than he experienced at Waymart constituted illegal punishment *per se*. This is incorrect. The relevant source of law is the Eighth Amendment. Allison addresses the Eighth Amendment in Complaint ¶ 15, alleging that for the next several days he was housed in cell #8, the first night with five men in a four-man cell, and thereafter either four or three men in the cell, all of them similarly deprived of clothes and provided with one blanket. Some inmates allegedly were heroin addicts going through withdrawal and others were mentally ill inmates who claimed that they had not been provided with their medications. There was only one roll of toilet paper for use in the cell and the cell was "teeming" with feces, urine, and vomit. *Id.* Allison does not allege in the complaint that he was locked down, or that he did not have access to showers, or that he was deprived of food or water or access to medical care, or that he contracted any illness. Allison repeatedly alleges that he was in danger because one of his fellow inmates might have attacked him, but he does not allege that any assault ever took place. Other than his disgust at the revolting conditions Allison alleges no injury. He does not even allege that he complained to anyone about his conditions at the time.

Allison, disregarding his own allegation that it was Helsel's "misdiagnosis" that caused his cell placement, alleges that Sollenberger was not "required" to place him in cell #8. Complaint ¶ 16. From this, Allison concludes that "Mr. Allison was simply a 'sexual offender' who was being clearly discriminated against." *Id.* Allison alleges that he was exposed to a substantial risk of serious harm from his cellmates and that Sollenberger "knew, should have known or was in the position to know" of this risk. Complaint ¶ 17.

Allison begins Count II at Complaint ¶¶ 18-19. Allison alleges that Sollenberger's cell assignment in what Allison alleges was a "suicide prevention" cell (Allison's use of quotation marks may be intended to signal irony because as Allison had already alleged, *see* Complaint ¶ 10, and would later allege, *see* Complaint ¶¶ 20, 32, J block was a general population unit) was caused by Helsel's improper diagnosis, and that Cruz could easily have "refuted" either Helsel's diagnosis or Sollenberger's placement (which is meant is not clearly alleged) if Cruz had reviewed Allison's medical records compiled by the DOC during Allison's sixteen years in custody. Allison then alleges that cell #8 was not in fact

one of the prison's "suicide watch" cells, but was used by Sollenberger, Helsel, and Cruz "to further 'torture,' disturb and further harm" him. Complaint ¶ 20.

In Count III, beginning at Complaint ¶22, Allison alleges that "the collective defendants" "utilized" his conviction "to further punish, and retaliate" against him. Complaint ¶24. Allison's reasoning is the incomplete syllogism that: 1) being labeled as a pedophile, like being labeled a snitch, puts an inmate at risk; and 2) his conviction was for a sexual offense against a minor. Although Allison asserts that informing even one inmate about his status as a sexual offender "creates undue harm," Complaint ¶24, Allison does not in Complaint ¶¶ 22-25 or anywhere else allege that any defendant disclosed his offense history to any inmate. Allison alleges in one of his briefs, ECF no. 41 at ¶ 48, that a "staff" member or members "provided information" to his cellmates that he "was a sexual offender."

It is an open question whether a district court has discretion to treat new allegations in briefs as equivalent to motions to amend the complaint, *see* Washington v. Wetzel, No. 22-2182, 2024 WL 5154024, at *2 (3d Cir. Dec. 18, 2024), *citing* Schmees v. HC1.COM, Inc., 77 F.4th 483, 488 (7th Cir. 2023), but if I can allow it I do not allow it. It would radically change motions practice to allow a party, who already can amend a complaint of right when challenged by a motion to dismiss, to do so by an allegation buried in an argument on one page of several lengthy briefs. Appellate courts would never tolerate such an imposition on their resources. *See e.g.*, the draconian waiver rules outlined in Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist., 877 F.3d 136, 145 (3d Cir. 2017)(including that an argument is waived if it is "ill-developed"), *cited with approval in* Washington v. Wetzel, *supra.*

Since the "staff" who provided information to Allison's cellmates that Allison was convicted of a sex offense is not identified as a defendant, even if I allowed amendment by brief it would not suffice to state a claim. And, to repeat, Allison does not allege that any fellow inmate harmed him.

Allison expresses his theory of liability against defendant Tate, the warden of the Blair County Prison, in Count IV. Complaint ¶¶ 26-32. Allison alleges without supporting details that she "knew, should have known, or was in the position to know" that Allison was in significant danger as a result of his cell assignment. Complaint ¶ 27. Once again, Allison fails to allege that anyone actually harmed him.

Count V at Complaint ¶¶ 33-37, incorporates Allison's previous allegations and asserts that the allegations amount to a substantive due process claim because the alleged conduct of Sollenberger, Helsel, and Cruz shocks the conscience. This adds nothing: since the Eighth Amendment provides an express textual basis for any claim, invoking substantive due process as another basis for a claim is superfluous.

Count VI, Complaint ¶¶ 38-40, incorporates the allegations of the complaint and asserts that the principle of *res ipsa loquitur* justifies an inference that a substantial risk of serious harm to Allison existed and that Sollenberger and Helsel were deliberately indifferent to it because they only acted as they did because they learned that Allison had been convicted of a sex offense. Complaint ¶ 40. This adds nothing. A rule of inference like *res ipsa loquitur* is not a claim.

Count VII at Complaint ¶¶ 41-45 asserts that defendants are all liable to Allison for "forc[ing] [him] into a situation" where he was subject to "'constant, intrusive' observation" by "a m[e]nagerie of solely female corrections officers," and that this was "solely intended to cause humiliation based upon Mr. Allison's criminal conviction." Complaint ¶ 42. This allegedly was due to "seeming custom of conduct" of the Blair County Prison to retaliate against sex offenders "when and if" they arrive at the prison. Complaint ¶ 43.

The complaint can be analyzed by claim by claim or defendant by defendant. Because the claims against Warden Tate are the most easily separated, I address her potential liability first. Warden Tate, like corrections personnel generally, is liable for deprivations of basic human needs in prison if they are "deliberately indifferent" to those needs. That requires allegations that a defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Allison does not claim that he interacted at all with Tate during his few days at the prison, or for that matter that Tate even knew Allison was in the prison. Tate's liability begins and ends with Allison's assertion that Tate is liable for the conduct of Sollenberger, Cruz and Helsel because she knew or should have known of their actions and failed to train them to avoid "this situation." Complaint ¶28. The Supreme Court made it clear in Ashcroft v. Iqbal, 556 U.S. at 680, that conclusory allegations by Allison that Tate or any other defendant "knew" something is not an allegation of fact entitled to the assumption of truth. In Ashcroft v. Iqbal, the plaintiff pleaded that the defendant government officials "knew of, condoned, and willfully and maliciously agreed" to subject plaintiff to harsh conditions of confinement as a matter of policy. The problem, said the Court, is not that such an allegation is unreasonable or nonsensical, but that it is conclusory. 556 U.S. at 680. So it is with Allison's allegation that Tate knew that the prison mistreated sex offenders "when and if" they arrived.

There is no vicarious liability in civil rights claims. Being legally responsible for overall operation of the prison is not personal participation in any subordinate's actions. *See* Monell v. New York City Dep't of Social Services, 436 U.S. 658, 690-91 (1978) (municipal employers are liable for deprivation of civil rights caused by their own illegal

6

customs and policies but are not liable for their employees' actions). To state a claim against Tate for a civil rights violation by a subordinate Allison must allege facts allowing the inference that Tate caused that violation, that is, the alleged actions of the subordinate that violated Allison's rights were pursuant to a policy of Tate's. A "policy" is either an act by Tate herself or a practice throughout the prison "so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 60–61 (2011). Allison does not allege that Tate ordered his alleged treatment. Allison does not allege one similar episode that would allow the inference that a custom of "how the prison treats sex offenders" even exists, much less that Tate knew of it.

Assuming for the moment that Allison alleged a valid claim for some injury, Tate would only be liable if she were alleged to be the moving force behind that injury. As the Court of Appeals stated in Chavarriaga v. New Jersey Department of Corrections, *supra*, 806 F.3d at 223 (3d Cir. 2015):

> [T]o establish a claim against a policymaker under § 1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation. [*citing and quoting* Sample v. Diecks, 885 F.2d 1099, 1114 (3d Cir.1989)]

Remote "but for" cause and effect causation as a basis for liability has uniformly been rejected as a basis for liability for the reasons stated by the Supreme Court in Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 405 (1997):

> Respondent's claim, rather, is that a single [...] decision can launch a series of events that ultimately cause a violation of federal rights. Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.

In Connick v. Thompson, *supra*, 563 U.S. at 70, the Supreme Court held that lower courts "must adhere to a stringent standard of fault, lest municipal liability under § 1983 collapse into *respondeat superior*." (cleaned up). Allison alleges no reason why the warden in fact knew (should have known is not enough) that the medical defendants had made an improper cell assignment or that anyone was mistreating Allison. *See* Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Because Allison offers nothing more than *respondeat superior* liability against Tate, no claims are stated against her.

Defendant Helsel allegedly provided screening and evaluation of Allison for purposes of determining suicide risk after defendant Cruz allegedly had finished asking Allison questions "from a standardized evaluation" about his health. Complaint ¶ 9. That is the sum and total of all the allegations about contacts between Allison and these two

defendants. There is no express or implied allegation that Cruz had input into the decision where Allison should be celled. The allegation that Allison's answer to Helsel's question about the nature of Allison's conviction caused the atmosphere in the room to become hostile does not even constitute an express allegation that learning the nature of Allison's offense caused his cell assignment by Helsel. Allison does implicitly allege that his cell assignment was intended as additional punishment for his status as a sex offender, Complaint ¶ 20, and there is an implied allegation that Sollenberger placed Allison in his assigned cell "through Ms. Helsel's improper diagnosis." Complaint ¶ 19.

These allegations negate any claim against Sollenberger. Allison alleges that Sollenberger was not required to put him in the particular cell. But to state a claim, Allison had to allege some reason why Sollenberger was required **not** to put him in the cell designated by Helsel. Allison presents no reason why Sollenberger knew that Helsel's cell assignment injured Allison. *See* Spruill v. Gillis, *supra*, 372 F.3d 218 at 236. Allison's argument that Sollenberger had to know Helsel was wrong because Helsel was wrong is not even complete enough to be called a circular argument.

Allison's allegations, taken to their utmost, also negate any claim against Cruz. There is not even an invalid *respondeat superior* claim because there is no allegation that Cruz was Helsel's supervisor. Allison's implicit allegations are that Cruz's post at the Blair County Prison gave her access to sixteen years of Allison's medical records compiled by the Department of Corrections, that Cruz should have reviewed them, and that having done so Cruz should have countermanded Helsel's actions. *See* Complaint ¶ 19. This does not allege either that Cruz had the power to supervise Helsel or that Cruz had any reason to countermand Helsel's evaluation. If such were implied in the complaint, then for the reasons just discussed with respect to claims against Warden Tate, no claims are stated against Cruz because her liability would be based on *respondeat superior*. Any alleged duty on the part of Cruz to supervise Helsel and any alleged failure to countermand or correct Helsel's evaluation would not make her the moving force behind Helsel's actions. Medical defendants only violate the Eighth Amendment if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This requires allegation of objective harm and allegation of a more culpable subjective state of mind than negligence or medical malpractice. *See* Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.1999). Allison's allegation that Cruz's "lack of research," Complaint ¶ 19, caused her not to overrule Helsel does not make Cruz liable: alleging Cruz's ignorance conclusively establishes that Cruz cannot be liable. Cruz can be deliberately indifferent only if she "**knows of** and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, *supra*, 511 U.S. at 837 (my emphasis). Alleging that Cruz did not know what she should have known is not enough to state a claim against her.

Any claim against Helsel would have to stem from her sole alleged interaction with Allison, after which she gave Allison his cell assignment. Allison's claim based on the alleged filthy conditions of the cell fails because the *scienter* element of deliberate indifference requires Allison to allege that Helsel, (or Tate or Cruz or Sollenberger) had knowledge of Allison's filthy cell conditions. He does not. That is fatal to any claim against the defendants. The claim also fails because there are no allegations that Helsel, (or Tate or Cruz or Sollenberger) had any duty with respect to maintaining cells. It is implausible that in the Blair County Prison two particular intake nurses, the warden, or a particular corrections officer had the duty to clean Allison's laundry, bedding, or cell, and Allison does not so allege. That lack of duty is fatal to any claim against the defendants for the reasons the Court of Appeals stated in Sample v. Diecks, *supra*, 885 F.2d at 1110:

> Among the circumstances relevant to a determination of whether the requisite attitude [necessary for deliberate indifference] was present are the scope of the official's duties and the role he or she has played in the everyday life of the prison. Obviously, not every official who is aware of a problem exhibits indifference by failing to resolve it.

Despite Allison's implausible claim that Blair County kept a cell full of inmates with drug addictions and mental health issues just for the purpose of punishing him or other sex offenders "when and if" they arrived, Complaint ¶ 43, no claim is stated against Helsel (or Tate or Cruz or Sollenberger) for the allegedly wrongful cell assignment in itself. Proper cell assignment can be considered a discretionary act that may be done correctly or incorrectly, but "without more, a mistake in professional judgment cannot be deliberate indifference." Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 662 (7th Cir. 2016). Helsel's alleged assignment of Allison to a particular cell, whether a general population cell or a suicide watch cell, cannot under any circumstances be characterized as an act which in itself is harmful. Even placing an inmate in more than normally punitive conditions "falls within the expected perimeters of the sentence imposed by a court of law," Sandin v. Conner, 515 U.S. 472, 485 (1995), and violates neither a procedural nor substantive right of the inmate. *Id*.

Allison's claim against Helsel or anyone else that he was placed in danger or could have been in danger due to his cell assignment fails for the obvious reason that Allison does not allege that the danger claimed ever came to pass. But even had some injury occurred, for Allison to allege a claim against anyone including Helsel based on his cell assignment he needed to state the element of deliberate indifference. He could have done that by alleging facts establishing either that anyone including Helsel knew of a concrete threat to plaintiff from the particular person who harmed him but declined to act, or that Helsel *et al.*, even though not aware of the particular risk that a particular person posed to a particular plaintiff, were aware of "an unreasonable and excessive risk of abuse" to Allison "generally" from the cellmate who harmed him. Beers-Capitol v. Whetzel, 256

F.3d 120, 133 (3d Cir. 2001)(failure to protect inmate from sexual assault by staff member). Allison had to allege facts showing that a defendant – whether Helsel or anyone else - knew "of a specific threat of harm" to Allison, or that a defendant was aware of a "pervasive risk of harm" to Allison from being placed in a particular cell in J block. *See* Day v. Federal Bureau of Prisons, 233 Fed.Appx. 132, 133-34 (3d Cir. 2007).

Allison, to repeat, never alleges he was harmed. The closest Allison comes to alleging any defendant's awareness of a threat is the general proposition that sex offenders with minor victims are especially disfavored. But a plaintiff cannot rest on "the generally recognized but unquantified risk that inmates will assault other inmates." Hazel v. McCullough, 2007 WL 1875807 at *7 (W.D. Pa. June 27, 2007), *citing* Beers-Capitol v. Whetzel, *supra*. Just as a general complaint that a plaintiff is "not getting along" with a cellmate does not suffice to allege a genuine issue of fact that a defendant had knowledge of a specific threat, *see* Ned v. Kardin, 779 Fed.Appx. 75, 76 (3d Cir. 2019), a claim of "excessive risk" is a conclusion, not an allegation of fact.

Finally, the PLRA requires me to consider "at any time" whether the defendants are immune. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). A qualified immunity analysis involves two questions: whether the official violated a statutory or constitutional right, and whether that right was clearly established at the time of the challenged conduct. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). That does not require a case directly on point, but does require that "existing precedent must have placed the statutory or constitutional question beyond debate," al-Kidd, 563 U.S. at 741, when the "violative nature of *particular* conduct" is considered. al-Kidd, 563 U.S. at 742 (my emphasis). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition," Mullenix v. Luna, 577 U.S. 7, 12 (2015), so that government officials can reasonably anticipate when their conduct may give rise to liability. In other words, a viable claim must be factually similar to one recognized by the Supreme Court (or maybe a robust consensus of Courts of Appeals), not just in the same legal ballpark.

At the level of specificity required by the Supreme Court, would it have been clear to any defendant that assigning Allison to a cell with other inmates was wrongful? No, and to the contrary the defendants, if we indulge the fiction that they must read the advance sheets to know what is permissible, would have been familiar with Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Depriving Allison of clothes except for a blanket? No, and to the contrary the defendants, if we indulge the fiction that they must read the advance sheets to know what is permissible, would have seen in Trammell v. Keane, 338 F.3d 155, 165 (2d Cir. 2003), that although prolonged nakedness in bitter cold that

jeopardized an inmate's safety might be actionable, being "made uncomfortable by the deprivation of his clothing" but being provided with a blanket for several days does not suffice to allege an Eighth Amendment violation. Being observed by female corrections officers? No, and to the contrary the defendants, if we indulge the fiction that they must read the advance sheets to know what is permissible, would have seen that the latest word from our Court of Appeals more than a decade ago in Small v. Wetzel, 528 Fed.Appx. 202, 207 (3d Cir. 2013), is that female corrections officers viewing male inmates naked during strip searches is not a constitutional violation.

      An inmate who alleges that for approximately twenty-eight months he was confined in a cell with five other men with 29 square feet of room per person, that he suffered from inadequate ventilation, stifling heat in the summer and freezing cold in the winter, urine and feces splattered on the floor, insufficient cleaning supplies, a mattress too narrow for him to lie on flat, and noisy, crowded conditions that made sleep difficult and placed him at constant risk of violence and serious harm from cellmates, plausibly alleges cruel and unusual punishment in violation of the Eighth Amendment. Walker v. Schult, 717 F.3d 119, 126 (2d Cir. 2013). Allison amply alleges his subjective outrage, but he does not allege either the objective or subjective elements of any Eighth Amendment claim.

DATE: April 24, 2025

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel and by U.S. Mail to:

Howard Scott Allison HV-7470
S.C.I. Waymart
P.O. Box 256
Route 6
Waymart, PA 18472